## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BETTY A. MATEER,

                Plaintiff,

      v.

ANDREW SAUL, Commissioner of Social
Security,

                Defendant.

CIVIL ACTION NO. 3:20-CV-00047

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Betty A. Mateer ("Mateer") brings this action under sections 205 and 1631 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.

For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision to deny Mateer benefits is **AFFIRMED**. **FINAL JUDGMENT** is entered in favor of the Commissioner and the Clerk of Court is directed to **CLOSE** this case.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 20, 2018, Mateer protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income, claiming disability beginning October 5, 2017, due to degenerative disc disease of the lumbar and cervical spines, fibromyalgia, emphysema, chronic obstructive pulmonary disease, and obesity. (Doc. 12-2, at 16; Doc. 12-2, at 19). The Social Security Administration initially denied both applications

on September 11, 2018, prompting Mateer's request for a hearing, which Administrative Law Judge (ALJ) Lawrence J. Neary held on June 25, 2019. (Doc. 12-2, at 16). In a written opinion dated August 9, 2019, the ALJ determined that Mateer was not disabled from October 5, 2017, through the date of the decision, and therefore not entitled to benefits under Titles II or XVI. (Doc. 12-2, at 16). On November 6, 2019, the Appeals Council denied Mateer's request for review. (Doc. 12-2, at 2).

On January 10, 2020, Mateer filed the instant complaint. (Doc. 1). The Commissioner responded on March 26, 2020 and provided the requisite transcripts from Mateer's disability proceedings on May 11, 2020. (Doc. 9; Doc. 12). The parties then filed their respective briefs, with Mateer raising six bases for reversal or remand. (Doc. 17; Doc. 18).

## II.   STANDARDS OF REVIEW

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905.[1] Additionally, to be eligible to receive benefits under Title II of the Social Security

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(d).

Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

### B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, 798 F. App'x 734, 736 (3d Cir. 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence

or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Mateer was disabled, but whether the Commissioner's determination that Mateer was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.   THE ALJ'S DECISION[2]

In his written decision, the ALJ determined that "[Mateer] has not been under a disability within the meaning of the Social Security Act from October 5, 2017, through the date of this decision . . .." (Doc. 5-5, at 15). Further, the ALJ determined that Mateer was capable of performing light work with particular limitations discussed *infra*. (Doc. 12-2, at 17). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

#### A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1520(b), 416.920(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974.

Here, the ALJ determined that Mateer "has not engaged in substantial gainful activity since October 5, 2017, the alleged onset date." (Doc. 12-2, t 19). Thus, the ALJ's analysis proceeded to step two.

#### B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-

---

[2] At the outset, the ALJ determined that Mateer met the insured status requirements of the Social Security Act through December 31, 2022. (Doc. 12-2, at 19).

month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step.

Here, the ALJ concluded that Mateer had the following severe impairments that "limit the ability for Mateer to perform basic work activities": degenerative disc disease of the lumbar and cervical spines, fibromyalgia, emphysema, chronic obstructive pulmonary disease, and obesity. (Doc. 12-2, at 19).[3]

C.   STEP THREE

At step three, the ALJ must determine whether an impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ determined that none of Mateer's impairments, considered individually or in combination, met or equaled the severity of a listed impairment. (Doc. 12-2, at 20). The ALJ

---

[3] The ALJ also found that Mateer suffered from additional non-severe impairments including hypothyroidism and psoriasis. However, the ALJ notes that Mateer has had no formal treatment for her psoriasis and has been treated with medication since 2014 for her hypothyroidism which has proved helpful to her condition. Thus, because these conditions are only of "minimal degree of limitation . . . they are therefore considered nonsevere." (Doc. 12-2, at 20).

considered the respiratory disorders listings under section 3.00 of appendix 1 – specifically, listings 3.02 (chronic respiratory disorders). 20 C.F.R. Part 404, Subpt. P, App. 1 § 3.00. (Doc. 12-2, at 20). Additionally, the ALJ considered the musculoskeletal system disorders listing under section 1.00 of appendix 1 – specifically, listing 1.04 (disorders of the spine). 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00. (Doc. 12-2, at 20).

    D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).

Here, based on his consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Mateer had the RFC to perform light work "except she can engage in occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing of ladders, ropes, or scaffolds, and can tolerate no exposure to extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation."(Doc. 12-2, at 20).

E.    STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, the ALJ found that Mateer could perform past relevant work as a help desk operator, as actually and generally performed. (Doc. 12-2, at 23). With this finding, Mateer was determined not disabled pursuant to 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). (Doc. 12-2, at 23).

IV.   DISCUSSION

On appeal, Mateer submits that the ALJ erred in (1) determining that Mateer's physical impairments do not meet or equal a listing; (2) determining that statements by Mateer concerning the intensity, persistence and limiting effects of the symptoms of her impairments are not consistent with the medical evidence; (3) finding that performing brief, sporadic activities associated with the activities of daily living suggests that Mateer is capable of performing work-related activities; (4) determining that Mateer's obesity did not increase the severity of her co-existing impairments to the extent that the combination of impairments met or medically equaled the requirement of any listing; (5) failing to recognize the extent of

Mateer's limitations in determining that she has the capacity to perform her past work; (6) failing to recognize that the extent of Mateer's limitations resulted in impairment so great as to preclude all work. (Doc. 14, at 3, 4-12).

> A.   THE ALJ DID NOT ERR IN DETERMINING THAT MATEER'S PHYSICAL IMPAIRMENTS DO NOT MEET OR EQUAL A LISTING.

Mateer claims that the ALJ erred in determining that her impairments do not meet or equal a listing under 1.04 because she suffers from severe pain in her lumbar spine equal to that which is medically required by the listing (Doc. 17, at 4, 6). In challenging the ALJ's decision that she does not meet listing 1.04, Mateer states that she experiences pain that radiates to her left leg, tenderness of the lumbar back, and experiences a decreased range of motion. (Doc. 17, at 6). The ALJ determined that "there is no evidence of nerve root compression, which results in motor loss . . . and sensory or reflex loss . . . no evidence of spinal arachnoiditis or lumbar spinal stenosis that results in the inability to ambulate effectively . . . [and] that the claimant walks with a normal, unassisted gait . . . [and has] no deformities [on the spine]." (Doc. 12-2, at 20). Weighing the evidence, the ALJ concluded that Mateer's impairment did not meet the requirements to be categorized as a listing under 1.04. (Doc. 12-2, at 20)

For a claimant to qualify for benefits at the third step of the ALJ's evaluation process, the claimant "must meet *all* of the specified medical criteria applicable to that particular listing. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed

impairment." *Petition of Sullivan*, 904 F.2d 826, 839 (3d Cir. 1990) (internal quotations omitted) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530) (emphasis in original). A listing outlines "impairments that would prevent an adult . . . from performing any gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532. Listings were created to act as a preliminary matter to determine whether further inquiry by the ALJ is necessary. *See Zebley*, 493 U.S. at 532. A person is deemed to have met a listing when they suffer from such a severe disability that it "precludes any gainful work." *Sullivan*, 904 F.2d at 840.

Listing 1.04 involves "[d]isorders of the spine [that] resul[t] in compromise of a nerve root or the spinal cord."  In order to meet the criteria for listing 1.04, a claimant must present one of the three required forms of evidence: "(1)[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight -leg raising test . . . ; or  . . . (2)[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or . . . (3)[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00.

The Court's review is limited "to considering whether the factual findings are supported by substantial evidence." *Katz*, 798 F. App'x, at 736. Thus, the Court must look for "substantial evidence in the record supporting the ALJ's determination." *Katz*, 798 F. App'x, at 737. The ALJ looked to all three methods to meet the criteria of listing 1.04 and found that

the claimant lacked evidence to show that she met the criteria for this listing. (Doc. 12-2, at 20). The ALJ asserts that "there is no evidence of nerve root compression, which results in motor loss . . . and sensory or reflex loss," as required by the first option in listing 1.04. (Doc. 12-2, at 20). Mateer provides citations to the record regarding her pain levels and a straight leg test for lower back pain but does not provide direct evidence of motor or sensory loss. (Doc. 17, at 4-6). The ALJ's finding that Mateer did not provide evidence of motor or sensory loss is supported by an internal medicine examination that found Mateer had "no sensory deficit[s]" and a "5/5 [strength rating] in [her] upper and lower extremities." (Doc. 12-7, at 8, 55). Because Mateer does not provide the court with evidence of motor or sensory loss, this finding is supported by substantial evidence. *See Garret v. Com. Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008).

Additionally, the ALJ found that "there is no evidence of spinal arachnoiditis or lumbar spinal stenosis that results in the inability to ambulate effectively" as required by the second and third options in listing 1.04. (Doc. 12-2, at 20). The ALJ cites to notes from a consult indicating that "the claimant walks with a normal, unassisted gate." (Doc. 12-2, at 20). Additionally, listing 1.04 requires that evidence of spinal arachnoiditis be "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imagining" and that lumbar spinal stenosis be "established by findings on appropriate medically acceptable imaging." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00. The ALJ examined an x-ray scan of the claimant that showed no deformities. (Doc. 12-2, at 20). Therefore, Mateer failed to establish spinal arachnoiditis or lumbar spinal stenosis through the appropriate channels of evidence and the ALJ provided substantial evidence to support his finding.

- 11 -

In his opinion, the ALJ provided substantial evidence to support that Mateer "did not meet or medically equal the severity of [listing 1.04]." (Doc. 12-2, at 20.) The ALJ provided sufficient evidence from Mateer's medical reports to support his finding. Conversely, Mateer merely cited to evidence of pain and physical examinations that demonstrated she suffered from this pain and did not provide evidence as to how her condition consisted of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (Doc. 17, at 5-6). Because Mateer failed to provide the evidence required to meet listing 1.04 and the ALJ cited to medical reports in his opinion, the court finds that step three was supported by substantial evidence. *See Garret*, 274 F. App'x, at 163 (noting that although a claimant may meet some of the criteria of listing 1.04, if she does not provide evidence of all of the criteria and ALJ's finding that the claimant failed to meet the requirements of listing 1.04 is supported by substantial evidence.).

    B.    THE ALJ DID NOT ERR IN DETERMINING THAT STATEMENTS BY MATEER CONCERNING THE INTENSITY, PERSISTENCE AND LIMITING EFFECTS OF THE SYMPTOMS OF HER IMPAIRMENTS ARE NOT CONSISTENT WITH THE MEDICAL EVIDENCE.

Next, Mateer claims that the ALJ erred in determining that her statements concerning the severity of her pain were inconsistent with the medical evidence. (Doc. 17, at 6-8). Mateer argues that her subjective allegations of pain and her inability to perform daily tasks are consistent with the medical record. (Doc. 17, at 6-8). She reported that she had difficulty walking and breathing due to her back and knee pain, that she was unable to shower standing up, and that it was difficult for her to perform necessary daily tasks, like cooking and showering, due to the pain. (Doc. 12-6, at 21-23; Doc. 17, at 7). Mateer notes that "she suffers from Lumbar spinal joint dysfunction and cervical spinal joint dysfunction as well as

arthralgia of both the lumbar and cervical spine," as evidenced by a treatment note.[4] (Doc. 12-7, at 92; Doc. 17, at 7). Mateer also cites x-rays which "demonstrated mild reversal of the normal cervical lordosis with slight kyphosis . . . [and] extensive facet arthropathy in the lower lumbar spine and lumbosacral region . . . [and] [s]acralization of L5." (*See* Doc. 12-7, at 8; Doc. 17, at 7). Mateer claims that her "sacralization is the most reasonable explanation for her pain and limitations" and sufficient medical evidence supports her statements concerning the severity of her pain. (Doc. 17, at 8).

An ALJ may assess and "weigh the credibility of the evidence" pertaining to a credibility determination, but he also "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121 (3d. Cir. 2000). Additionally, an ALJ must consider both medical and non-medical evidence when assessing the credibility of a claimant's testimony. *See Burnett*, 220 F.3d at 122. Here, the ALJ looked to multiple forms of medical evidence and non-medical evidence (discussed *infra*) to determine the credibility of Mateer's claims of severe pain. The ALJ examined x-ray scans that indicated "degenerative changes and disc space narrowing at the C4-C5 and C5-C6 vertebrae, along with degenerative changes in the lumbar spine (6f)."[5]

---

[4] In this same treatment note, it is recorded that Mateer "noticed her symptoms about 100% of the day." However, this is recorded under the patient's subjective complaints and is not the Chiropractor's objective observations or assessment of Mateer's symptoms. (*See* Doc. 12-7, at 92); *see also Hatton v. Comm'r of Soc. Sec. Admin.,* 131 F. App'x 877, 879 (3d Cir. 2005) (citing *Craig v. Chater,* 76 F.3d 585, 590 n.2 (4th Cir. 1996) (stating that a medical source does not transform the claimant's subjective complaints into objective findings simply by recoding them in his narrative report)).

[5] The Court interprets the ALJ's statement to include the consideration of Mateer's sacralization of L5 because it was noted in the medical record and the ALJ mentioned comments from the same x-ray scan in his decision. (*See* Doc. 12-2, at 21; Doc. 12-7, at 8).

(Doc. 12-2, at 21). However, the ALJ also consulted notes from a physical exam where Mateer's gait was normal and it was determined that she could walk without assistive devices and had a 5/5 strength in both her upper and lower extremities and found that these actions were inconsistent with Mateer's allegations of severe pain. (*See* Doc. 12-7, at 54-55; Doc. 12-2, at 20). The ALJ also took into consideration Mateer's lack of physician recommended medical treatment, as Mateer only used a TENS unit and numbing cream for pain and had not been prescribed any medication, had not had surgery recommended to her, and had not seen a pain management specialist. (Doc. 12-2, at 21-22, 42-43). Additionally, the ALJ "considered [and found persuasive] the opinion of Dr. Louis B. Bonita, M.D., the State Agency consultant" who stated that "the claimant is capable of light work" with certain exceptions. (Doc. 12-2, at 22; *see also* Doc. 12-3, at 12). Finally, the ALJ "considered the opinion of Dr. Ahmed Kneifati, M.D., an independent consultative examiner, who determined . . . that the claimant is capable of light work" with exceptions and found that "this opinion is supported by the objective medical evidence." (Doc. 12-2, at 23; Doc. 12-7 at 52-56).

The ALJ recognized that Mateer's symptoms could be due to her impairments, however he disagreed with the severity to which Mateer claimed her symptoms incapacitate her. (Doc. 12-2, at 21). The ALJ cited to substantial evidence in supporting his opinion. The multiple opinions from different doctors and experts along with x-ray scans and medical reports are all "evidence [that] a reasonable mind might accept as adequate to support a conclusion." *See Pierce,* 487 U.S. at 565 (internal quotation marks omitted); (Doc. 12-2, at 21-23).

C.   THE ALJ DID NOT ERR IN FINDING THAT PERFORMING BRIEF AND
SPORADIC ACTIVITIES ASSOCIATED WITH THE ACTIVITIES OF DAILY LIVING
SUGGESTS THAT MATEER IS CAPABLE OF PERFORMING WORK-RELATED
ACTIVITIES.

Next, Mateer asserts that her ability to perform "limited and sporadic activities of daily living" should not have contributed to the ALJ's decision that Mateer could perform "work-related activities." (Doc. 17, at 8-9). Mateer argues that in order for the ALJ to properly find that she had the "residual functional capacity to perform a certain type of work, [she] must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." (Doc. 17, at 9). Mateer distinguishes "the ability to do light housework" with "the ability to engage in substantial gainful activity." (Doc. 17, at 9). The ALJ relied upon Mateer's ability to perform daily activities to determine that her "allegations of disabling functional limitations" were not consistent with the acts she is able to perform. For example, in a function report Mateer testified that she can prepare her own meals daily and that it takes her "10 min to an hour with breaks" to prepare her food. (Doc. 12-6, at 23). The ALJ found that this ability did "not suggest a disabling level of impairment." (Doc. 12-2, at 22).

The ALJ is permitted to consider Mateer's daily activities when evaluating her disabling level of impairment. *See Landeta v. Comm'r of Soc. Sec.,* 191 F. App'x 105, 109 (3d Cir. 2006) (stating that the ALJ considered "the claimant's daily activities" when evaluating the claimant's subjective complaints.); *see also Burns v. Barnhart,* 312 F.3d 113, 130-31 (3d Cir. 2002) (considering the claimants ability to take care of his dogs and play the drums when assessing the credibility of the claimant's testimony). Because ALJ's "credibility determinations . . . are virtually unreviewable on appeal," the Court defers to the ALJ's

interpretation of Mateer's allegations. *See Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed.Cir.2002) (internal quotations omitted). The ALJ considered evidence in the record of Mateer's function report where she described her ability to perform everyday tasks. (Doc. 12-2, 22; Doc. 22-6, at 22-27). The ALJ also relied upon the opinions of Dr. Bonita who stated that Mateer was "capable of light work" with exceptions. (Doc. 12-2, at 22; Doc. 12-3, at 14). Thus, although some of Mateer's alleged impairments may weigh against her ability to perform light work "the record [still] provides substantial support for [the ALJ's] decision."

    D.   THE ALJ DID NOT ERR IN DETERMINING THAT MATEER'S OBESITY DID NOT INCREASE THE SEVERITY OF HER CO-EXISTING IMPAIRMENTS TO THE EXTENT THAT THE COMBINATION OF IMPAIRMENTS MET OR MEDICALLY EQUALED THE REQUIREMENT OF ANY LISTING.

Next, Mateer asserts that the ALJ "failed to analyze the effects of her obesity" when assessing the "severity of her co-existing impairments." (Doc. 17, at 9). Mateer claims that her obesity contributed to her other severe impairments and should have been considered by the ALJ when evaluating whether her impairments equal a listing. (Doc. 17, at 9). The Defendant argues that Mateer's alleged disability did not include obesity, that the ALJ's reference to obesity in his decision is adequate to show consideration of the issue, and that Mateer did not demonstrate how her obesity contributes to the factors required to satisfy a listing. (Doc. 18, at 15).

An ALJ is found to have "indirectly considered obesity if the medical records relied on were sufficient to alert [him] that obesity could be a factor in the severity of the impairment." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020). Additionally, the mere mention of a diagnosis of obesity is enough for the Court "to conclude that the ALJ

- 16 -

was sufficiently alerted to [the claimant's] obesity." *Carter*, 805 F. App'x, at 143. Here, the ALJ mentions Mateer's obesity and lists dates of readings from the medical record where her body mass index was above the level for obesity. (Doc. 12-2, at 22). Additionally, Mateer has not explained how her obesity would contribute to a determination that she has met the listings she asserts. (*See* Doc. 17, at 9-10); *see also Carter*, 805 F. App'x, at 143 (stating that remand was not proper because the claimant did not explain how her obesity limited her ability to work). Because the ALJ relied on medical records and stated his awareness of Mateer's obesity in his opinion, this Court can conclude that the ALJ considered Mateer's obesity when assessing her impairments and the level required by a listing.

E.   THE ALJ DID NOT ERR IN FAILING TO RECOGNIZE THE EXTENT OF MATEER'S LIMITATIONS IN DETERMINING THAT SHE HAS THE CAPACITY TO PERFORM HER PAST WORK.

Next, Mateer argues that the ALJ did not accurately assess her limitations when he determined that she had the capacity to return to her past work. (Doc. 17, at 10). In her prior occupation, Mateer alleges that she was unable to "accommodate or mitigate her neck and back pain" due to the demands of the position. (Doc. 17, at 10). Mateer's past relevant work as a help desk operator required her to remain seated for two hours at a time with breaks in between each session. (Doc. 17, at 10). Mateer claims that her limitations prevent her "from being able to sit for extended periods of time without moving around or lying down to alleviate her symptoms." (Doc. 17, at 10). The Defendant argues that the ALJ's assessment of Mateer's residual functional capacity ("RFC") "is an administrative finding that is reserved to the Commissioner." (Doc. 18, at 22). Further, the Defendant argues that Mateer's subjective testimony does not outweigh the testimony from the impartial vocational expert ("VE") because the "VE's testimony constitutes substantial evidence." (Doc. 18, at 23). The

Defendant also notes that the Plaintiff has the burden of showing her inability to "return to her past relevant work" and the ALJ found that Mateer did not meet this burden. (Doc. 18, at 23).

Once a claim reaches the ALJ hearing level, "the administrative law judge . . . is responsible for assessing [the claimant's RFC]." 20 C.F.R. §§ 404.1546; 416.946. The Court evaluates the ALJ's finding under the substantial evidence standard. The ALJ relied on the VE's testimony "that in light of the residual functional capacity assigned, the claimant could be able to perform [her past relevant work as a help desk operator]." (Doc. 12-2, at 24, 57). This portion of the VE's testimony was conducted by the ALJ through a series of hypothetical questions that addressed impairments similar to that which Mateer suffers from. (Doc. 12-2, at 56-57). By relying on the VE's testimony, the ALJ provided "substantial evidence for purposes of judicial review where the testimony is in response to proper hypothetical questions which fairly set out all of a claimant's impairments." *See Lane v. Comm'r of Soc. Sec.,* 100 F. App'x 90, 97 (3d Cir. 2004).[6]

    F.   THE ALJ DID NOT ERR IN FAILING TO RECOGNIZE THAT THE EXTENT OF
         MATEER'S LIMITATIONS RESULTED IN IMPAIRMENT SO GREAT AS TO
         PRECLUDE ALL WORK.

Finally, Mateer argues that her inability to perform work related activities due to her pain "preclude[s] her from being able to perform any kind of substantial gainful activity." (Doc. 17, at 12). Mateer lists the pain with which she suffers, the activities that invoke her

---

[6] Additionally, the ALJ relied on the opinion of a State Agency consultant who stated "that the claimant is capable of light work" with some exceptions. (Doc. 12-2, at 22). Thus, the ALJ relied on substantial evidence by using a medical consultant's report which was located in the record.

pain, and the remedies she uses to alleviate her pain. (Doc. 17, at 11-12). Defendant argues that Mateer's subjective testimony regarding her pain is not an objective finding, thus the ALJ may choose to weigh Mateer's "subjective allegations" how he wishes if the reasoning is "supported by substantial evidence." (Doc. 18, at 23). The Defendant also argues that the ALJ's opinion was supported by the VE's testimony which constitutes substantial evidence. (Doc. 18, at 23-24).

As noted above, a VE's testimony is considered substantial evidence upon which an ALJ may rely. *See Lane,* 100 F. App'x, at 97. Therefore, by relying on the VE's testimony regarding the extent of Mateer's injuries and her ability to return to work, the ALJ has supported his factual findings with substantial evidence. (*See* Doc. 12-2, at 23, 58-60). Additionally, the ALJ is permitted to evaluate the credibility of Mateer's subjective testimony through the two-step process outlined by 20 C.F.R. §§ 404.1529, 416.929.[7] The ALJ stated that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 12-2, at 21). Although the ALJ acknowledged the possibility that Mateer's symptoms could be due to her alleged complaints, he decided by weighing[8] medical reports and testimony found within the record that Mateer's

---

[7] The two-step process provides that the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529, 416.929

[8] The Court interprets the ALJ's statement to include the consideration of Mateer's sacralization of L5. (*See* Doc. 12-2, at 21; Doc. 12-7, at 8).

claims were not so severe as to preclude her from all work. (Doc. 12-2, at 21-23). The ALJ used substantial evidence to formulate his determination because medical professionals' opinions, x-ray scans, and medical reports are all "evidence [that] a reasonable mind might accept as adequate to support a conclusion." *See Pierce,* 487 U.S. at 565 (internal quotation marks omitted); (Doc. 12-2, at 21-23). For example, the ALJ took into consideration Mateer's function report and an x-ray that indicated "degenerative changes and disc space narrowing." (*See* Doc. 12-2, at 21; Doc. 12-6, at 21-30; Doc. 12-7, at 8).   However, the ALJ found an internal medicine report from Dr. Kneifati persuasive in that it showed Mateer could walk "with a normal gain, could walk on her heels and toes without difficulty, and had a normal stance fee of assistive devices. . . . [and among other findings found that] she demonstrated stable joints . . . [and] had 5/5 strength in her upper and lower extremities." (*See* Doc. 12-2, at 21; Doc. 12-7, at 52, 54-55). Thus, the ALJ evaluated Mateer's testimony regarding her limitations and her ability to work through reasoned explanation supported by evidence in the record.

To reverse the ALJ's determination regarding the credibility of subjective testimony, Mateer bears a "heavy burden." *See Hoyman v. Colvin,* 606 F. App'x 678, 681 (3d Cir. 2015). Apart from listing her subjective testimony and her sacralization of L5, Mateer provides no further medical evidence as to why the ALJ's credibility determination should be overruled. Therefore, the ALJ's evaluation of Mateer's subjective testimony regarding her limitations as they pertain to her ability to perform work is supported by substantial evidence.

## V.   CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Mateer benefits, directs that **FINAL JUDGMENT BE ENTERED** in favor of the

Commissioner and against Mateer, and directs the Clerk of Court to **CLOSE** this case.

An appropriate Order follows.

**Dated: February 25, 2021**                                  *s/ Karoline Mehalchick*
                                                              **KAROLINE MEHALCHICK**
                                                              **United States Magistrate Judge**